United States District Court
District of Massachusetts

Reynault Chevalier (Plaintiff)

-against-

Zipcar, Incorporated; including

Charlie Irons-(General Manager-Zipcar- New York Regional Office)

Amanda Myer (Customer care representative-Zipcar-New York Regional Office)

& Abbey Nicholas (Zipcar-Corporate Office-Cambridge Massachusetts)

---

I, Reynault Chevalier bring forth a complaint and suit against Zipcar Incorporated and the named representatives in the above-captioned matter due to unethical business practices and Consumer rights violations.

### Opening:

Zipcar, Inc is a membership-based company of which permits members to share cars by the hour or day on their terms. The vehicles are outfitted with wireless technology, creating a reservation system and strategically placing fleet vehicles around major cities and neighborhoods.

During the month of February 2012, plaintiff had signed up for a Zipcar membership online. A $25.00 application fee was associated with respect to this. Plaintiff received his Zipcar membership card on Friday February 24th, 2012. The following day Saturday, he made a 2 day reservation to rent a Honda Insight Hybrid vehicle (New York license Plate: FPP-4764) located at the Montclair State University Campus in Montclair, New Jersey. The vehicle was originally picked up at the New Jersey Transit Station Parking lot located on the campus. The vehicle was never equipped with a parking permit being that most college campuses nationwide require students with vehicles to have such permits.

Plaintiff was required to return the vehicle by 9:00pm on Monday night February 27th, 2012. He had experienced some major difficulty locating the Montclair State University campus on that night. Plaintiff notified the Zipcar customer care center of this. A customer care representative stated

(1)

that the vehicle had to be returned to exact location that it was rented from. This location was described as the New Jersey Transit Station parking lot. This was not a Park and Ride Station. It was actually one of several parking lots located within the Montclair State Campus. It was essentially parking space owned by the college. After approximately three hours of driving, he successfully located the college campus. Plaintiff returned the vehicle to the Red Hawk Parking Deck. This parking is the main parking lot for the facility due to the admissions office in close proximity. Also the main college entrance and security gate is in close proximity to this parking lot as well. It was already going on 11:00 at night. Plaintiff had to be at work the very next day by 6:30am. Plaintiff had to commute back to his residence in New York from that part of New Jersey.

The customer service department for Zipcar was made fully aware of the parking location for the Honda Insight fleet vehicle. The following day, Tuesday February 28th, plaintiff received an email from a Zipcar employee (Amanda Myer) based out of the New York City Regional Office (1265 Broadway, New York, NY 10001), who stated in an email the following message and quoted:

*"Dear Reynault,*

*We have left you a voice mail, but we are following up on your reservation that ended February 28th in Insight Hybrid Ichiban.*

*The vehicle is not at its home location NJ Transit - Montclair State Station and we wanted to confirm with you where you returned the vehicle.*

*If the vehicle was towed or needs to be retrieved from another location, you may be held responsible for any tow and retrieval fees. You may also be responsible for the cost of the time the vehicle has been unavailable to other members as well as a late penalty.*

*Please contact us at your earliest convenience. My direct line [646.616.XXXX] or you can call our member services team at 866.4ZIPCAR (866.494.7227).*

*Regards,*

*Amanda zipcar"*

The following day (Wednesday February 29th 2012) this same representative forwarded a second message to plaintiff which stated and quoted:

*"Dear Reynault,*

*After a thorough review of your account, the Home Office has decided to terminate your Zipcar membership. This means that you will no longer have access to our vehicles or be able to reserve Zipcars. At this time, your account has been suspended and will be closed on February 29th. The decision is final and was based on failure to return the zipcar to its home location during your February 25th reservation in Insight Hybrid*

*Ichiban. Any credit on your account has been reimbursed to you and will show up on your credit card statement in 3-5 business days. To view your Zipcar invoice, sign into your Zipcar account and go to my stuff > my statement.*

*We apologize for any inconvenience and appreciate your cooperation. We hope you continue to seek out alternative transportation solutions.*

*Regards,*

*Zipcar Member Services*
*zipcar | wheels when you want them (TM)"*

Prior to plaintiff receiving the last email, Zipcar representatives at the Manhattan office claimed that they were trying to reach him several times on Tuesday 2/28/12 to find out the whereabouts of the rental car. Plaintiff was under the impression that when he explained to customer service of the vehicle whereabouts the previous night, there was a clear understanding between both parties. He had never expected to receive this type of correspondence from Zip Car of Manhattan, especially after plaintiff returned the vehicle to the Montclair State University Campus..........the same exact college where the vehicle was rented from.

On Wednesday, February 29th, plaintiff received voicemail messages from Amanda Myer of Zipcar Manhattan. In the message she had stated that she had been trying to reach plaintiff the entire day of Tuesday 2/28/2012. To find out the whereabouts of the Honda Insight he had rented because the vehicle was not able to be located for potential customers. Plaintiff immediately contacted Zipcar of Manhattan, he spoke with Miss Myer and she had stated that due to plaintiff not returning the phone calls left on his voicemail about the whereabouts of the vehicle, his account was going to be terminated.

However, plaintiff did mention to the Miss Meyer, that customer service was made aware of the whereabouts of the vehicle. And although the vehicle was not returned to the same exact parking lot on the Montclair state University campus, it was returned to the Montclair University Campus. The vehicle was originally rented from the Montclair Campus.

Plaintiff was then instructed to discuss the matter with Mr. Charlie Irons. That individual is the General Manager for Zipcar of Manhattan. Plaintiff was transferred to Mr. Irons. At that point Mr. Irons gave plaintiff the opportunity to explain his matter which he had explained in elaborate detail. Unfortunately, Mr. Irons response was one of which suggested that plaintiff was totally at fault and his lacking to show any consideration in the matter. He simply stated that plaintiff greatly inconvenienced other customers who were trying to rent the same vehicle he had rented. He also stated that his account was going to remain suspended. Plaintiff pleaded with Mr. Irons not to permanently terminate his account and consider the mitigating factors that came into play. However, Mr. Irons decision was final.

After this, plaintiff decided to address the matter to Zipcar's Corporate office located in Cambridge, Massachusetts. He spoke with Miss Abbey Nicholas who is the acting director of that department. Plaintiff explained everything that had occurred pertaining to his rental. Instead of focusing on the mitigating circumstances, and restoring plaintiff's Zipcar account, she instead basically supported the actions of the staff at Zipcar of Manhattan. Miss Nicholas told plaintiff that he was at fault and that nothing could be done to restore his Zipcar account. Miss Nicolas stated that it would be entirely up to Zipcar of Manhattan to restore plaintiff's account and that the final decision was not in her hands.

So after this had taken place, plaintiff set aside some time and wrote a letter to Mr. Charlie Irons of Zipcar Manhattan. The letter read the following:

"March 2nd, 2012

In RE: Membership ID# 134 715 8
Member name: Reynault Chevalier
Dear Mr. Irons:

Hello and Good Day. I know that we had spoken this past Wednesday 2/29. I just wanted to say that I deeply apologize for what occurred concerning my very first Zipcar Rental. If I could personally apologize to the potential customers who were trying to rent the Honda Insight that were unable to do so due to it not being in the original location, I would apologize immediately. One of those customers could have had an emergency and I should always take that into consideration. Once again please do send my apologies to the individuals who were trying to rent the Honda Insight after me that weren't able to.

However, I do respectfully ask that you take into account the mitigating circumstances in this matter. I did pick up the vehicle from the Montclair College Campus in New Jersey. Upon return, I had a very difficult time trying to find the town of Montclair. I became lost driving on various roads in New Jersey for long stretches of time. After about three hours of driving, I finally found the Montclair College campus. I parked it at the main entrance's parking lot (Lot 7-Red Hawk Deck). I did not want to take a chance trying to locate the exact parking lot it was originally parked at because the campus was very large. Montclair State University encompasses two towns of New Jersey (Little Falls and Montclair). And after I had already spent 3 hours trying to locate the college, I really did not want to end up getting lost again trying to find the original parking lot. Trying to find the college alone really took a lot out of me. I did mention to you that I had spoken with customer service for a long period of time after I returned the vehicle and I explained to them that I returned the vehicle to the same exact college campus it was rented from and I parked the vehicle in the main entrance parking lot. I told them that I returned the vehicle to the best of my ability. I just could not locate the exact parking lot it was rented from because I had gotten lost trying to find the college. I had to contact campus security to find out the exact name of the parking lot the Insight was originally parked at. I had to work on Tuesday 2/28; I don't bring my mobile phone when I am out working. I did not purposely avoid the calls I was getting from your office. I received Amanda's message at around 5:30pm on Tuesday 2/28. But when I returned her call, your staff left for the day.

Mr. Irons, please do not permanently close my Zipcar account because of something like this. I never took any property from the vehicle for myself. Everything in that vehicle was left the same way from when it was rented by myself. Sir, I do not steal. Also, I never got into an accident. There was not a single dent or scuff on that vehicle while I was renting it. The vehicle was still in mint condition after I had returned it. I have held my New York State Driver's license for fifteen years. I am a very good driver. My driving record is immaculate. I do not consume drugs or alcohol. Therefore, I certainly do not condone drinking and driving.

Mr. Irons, I enjoy driving. Driving is a part of my life, and I chose to sign up for a Zipcar membership because I see a lot of Zipcars on the road and I know that Zipcar is expanding throughout other states in the country.

Mr. Irons, if there is a fee I can pay to restore my Zipcar account, I would be

(4)

*able to comply. No one is perfect Sir. This was my first rental experience from Zipcar and although it was not a pleasant experience, there will be many good ones in the future. Please do not use what occurred as an excuse to permanently ban me from renting again from Zipcar. This type of treatment is way too harsh. At least the car was returned safely with absolutely no damage. If a customer had a mishap such as the one I had experienced at least give them a second chance..........especially when they had just signed up for a Zipcar account. I received my Zipcar membership card on February 24th only a few days ago. At least give me an opportunity to rebuild my credibility with Zipcar.*

*Thank you for your time Sir.*

*Respectfully*

*Submitted:"* Reynault Chevalier

This letter was prepared back on March 2nd, 2012. This particular letter was mailed out well over two months ago. Plaintiff never received any correspondence from General Manager Irons. At this point plaintiff is convinced that the Manhattan office does not want to have anything to do with him ever again based on what occurred and that any future letters from plaintiff will not be taken in good faith.

**Plaintiff now moves to bring forth suit against Zipcar, Inc.**

Initially when plaintiff opened his Zipcar account, various fees associated with the opening of the account were placed into effect. The application fee of $25.00 was deducted on 2/18/12. There were two annual membership fees each consisting of $65.33 and $75.00. Plaintiff's membership was abruptly terminated in such a short period of time. Zip car claims that plaintiff would be refunded the annual membership fee of $75.00. However, there was never any discussion to restore the amount of $65.33 to plaintiff. The cost associated with the rental including late fee's were rightful and plaintiff is not disputing that. (See Summary of Zip Car Charges -Exhibit A)

Also, as an addtion of insult to injury on behalf of Zipcar, Inc, Plaintiff was issued two parking violations charges. This was due to two tickets the rental had received at approximately 2:30am early Tuesday morning of 2/28 and a second ticket issued some hours later on that same day. These parking violation fees amounted to $140.00. Originally, when plaintiff rented the zipcar vehicle, there was never a parking permit present in the vehicle. The Montclair State University requires all vehicles left on the campus to have parking permits. Plaintiff should have never been charged this amount becuase it was Zipcar's responsibility to see to it that their own rental vehicles left on college campuses have parking permits. In all fairness approximately $280 should be restored to plaintiff.

The named individuals in this complaint have all mentioned to plaintiff that in the event that a vehicle is not returned to its exact location, the person renting the vehicle will be subjected to having his or her Zipcar account terminated and such decision is non negotiable.

**Zipcar's Section of Rules of vehicle use, section No. 4 (Vehicle Pick-Up and**

(5)

*Return/Vehicle Condition/Stolen vehicles) state in part the following:*

**Vehicle Pick-up and Return/Vehicle Condition/Stolen Vehicles/Belongings and Lost Property-Section 4**

4.1

You must pick up the selected vehicle at its designated Zipcar vehicle parking space and return it secured, clean, with at least a quarter tank of fuel, and in good working order, to the correct and designated Zipcar vehicle space by no later than the end time of your reservation. If the vehicle is available you may, at no additional charge, scan in to take possession of the Zipcar vehicle up to 14 minutes before your reservation start time; you will be charged in thirty (30) minute increments if you scan in more than 14 minutes in advance. Please note, however, that scanning into the vehicle prior to the scheduled reservation start time may cause promotional (for example, Overnight) discount pricing to no longer apply and regular rates may instead apply to your reservation.

4.2

Prior to taking possession of a vehicle, you must do an exterior walk-around and an interior look-over. Before driving the vehicle, you must advise Zipcar of any damage or abnormality encountered on the vehicle or in the operation of the vehicle. Without limiting the foregoing, you should report to Zipcar any warning lights that stay on after the ignition is engaged, any indication of leaking fluids near the vehicle, any cracks or chips in the windscreen, missing or inoperable signal or driving lighting, broken or missing rear-view mirrors, any other condition that may render the vehicle unsafe to operate, and any other damage that is not recorded in the vehicles damage log located in the vehicle (the "Damage Log"). If you observe any damage that is not reported in the Damage Log, you are required to inform Zipcar of such damage prior to driving the vehicle.

If Zipcar is not notified of a problem at the start of a reservation, you will be deemed to be responsible for any problem with the vehicle discovered or reported after your reservation, including, without limitation, damage to the vehicle, lack of cleanliness or low fuel. You may be charged the Damage Fee, a cleaning fee, low fuel fee or other applicable fees, and Zipcar may suspend, or may even terminate your membership.

4.3

The key, key fob or other starting device to the vehicle must be returned to its designated position within the vehicle at the conclusion of the reservation. The vehicle

must be locked at all times when it is not in use during your reservation. You must advise Zipcar immediately if you fail to leave the key/fob/starting device, fuel card or parking pass (if applicable) in the vehicle. You will be charged the hourly rate for the vehicle until the key/fob/starting device is returned and you will remain responsible for the vehicle during such period. You may also be charged a fee to replace any of the items missing from the vehicle.

4.4

Reserving Members are responsible for all charges and costs incurred related to the Zipcar vehicle for the entire period of the reservation and until the vehicle is returned, secured, closed, locked and serviceable (all accessories off, key out of ignition and in proper place, all windows, doors, hatches, sunroofs and other openings closed, fuel card, parking pass and other accessories in the vehicle) to its designated location. Zipcar vehicles must be returned no later than the end time of the reservation and the Member is required to swipe out of the vehicle. The Member will be billed for the full amount of the reservation time period, even if the vehicle is returned early. Should a vehicle be returned late, the reserving Member will be responsible for late fees as described in the Additional Charges Schedule.

4.5 - Stolen vehicles must be immediately reported and the Zipcard must be immediately returned to Zipcar as proof that Member had the Zipcard secured when the vehicle was stolen.

4.6 - Members must check that they have not left any belongings in the Zipcar. Zipcar makes reasonable effort to reunite lost belongings with their owner but shall not be held liable for any belongings left in a vehicle and the Member agrees not to hold Zipcar responsible for any belongings left in the Zipcar vehicle by the Member or any third party. Any discovered items will be logged and held by Zipcar for a period of no less than a month. Belongings not claimed within this period will be passed on to charity or disposed of at the discretion of Zipcar.

After reviewing the entire section of Rules of vehicle use, section No. 4 (Vehicle Pick-Up and Return/Vehicle Condition/Stolen vehicles) (See Exhibit  ), there is no information pertaining to situations and actions in the event a customer returns a rental vehicle to a location other than the original pickup location of which will result in a irreversible termination of his or her Zipcar account.

In closing, Plaintiff is requesting to be refunded approximately $280 for illegitimate charges. Also plaintiff is suing the Zipcar corporation for an unspecified amount. Plaintiff prays that this Court grant him the relief that he is requesting.

Dated: 6/9/12

Respectfully submitted

*Reynault CL*

Reynault Chevalier