UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

REYNAULT CHEVALIER,
         Plaintiff,

         v.                               CIVIL ACTION NO. 12-11045-NMG

ZIPCAR, INC., ET AL.,
         Defendants.

MEMORANDUM AND ORDER

GORTON, D.J.

BACKGROUND

On June 11, 2012, Plaintiff Reynault Chevalier ("Chevalier"), a New York resident,[1] filed a self-prepared Complaint against: (1) Zipcar, Inc. ("Zipcar"); (2) Charlie Irons ("Irons"), its general manager in the New York regional office; (3) Amanda Meyer ("Meyer"), its customer care representative in the New York regional office; and (4) Abbey Nicholas ("Nicholas"), the acting director of Zipcar's office in Cambridge, Massachusetts. Chevalier alleges that damages are owed to him because of "unethical business practices and Consumer rights violations" by the Defendants. Compl. at 1.

Chevalier's Complaint is essentially one long narrative detailing a negative experience he had while taking advantage of Zipcar's service, which is to rent cars to its members on an hourly or daily basis. Specifically, Chevalier applied to become a member of Zipcar, paid the application fee, and was subsequently accepted as a member on Feb. 24, 2012. He then made a

---

[1] Chevalier's place of residence or mailing address is not provided in his Complaint. The Court presumes that Chevalier is a resident (and citizen) of New York. This is based on: (1) the allegation that he worked in New York; (2) the allegation that he resided in New York; (3) the fact that he indicated that he also filed this action in the Southern District of New York; and (4) the fact that a search of PACER records of Chevalier's many prior lawsuits revealed New York addresses (at least as of September 2011).

two-day reservation for a car. The rental was to begin on February 25, 2012 and end on February 27, 2012. Chevalier picked up the car at the New Jersey Transit Station parking lot in the Montclair State University Campus in Montclair, New Jersey. Zipcar required that Chevalier return the car back to the same parking lot when he dropped it off two days later. Chevalier experienced difficulties in returning the car, alleging that he got lost for several hours and could not find the Montclair State University. Eventually, he located the campus, but did not return the car to the New Jersey Transit Station parking lot where he originally picked up the car. Instead, he returned the car to another parking lot on the Montclair State University campus. He asserts that the campus was very large, and he did not want to take a chance getting lost again because it was 11:00 p.m. and he had to commute back to his residence in New York for work at 6:30 a.m. He contends that he made the customer service department for Zip fully aware of the parking location for the rented car.

On Feb. 28, 2012, Meyer (Zipcar's customer car representative), attempted to contact Chevalier by telephone to inform him that the car he rented was not at the New Jersey Transit Station parking lot. She was unable to reach Chevalier, and eventually informed him of his failure to return the car by e-mail. Thereafter, on Feb. 29, 2012, Meyer left a voicemail message with Chevalier, and also e-mailed him to advise that due to his failure to return the car to the proper location, Zipcar had decided to terminate Chevalier's membership. Chevalier contacted Meyer and was directed to Irons (the general manager), who stood by the decision to terminate Chevalier's membership. Following these issues with New York's office, Chevalier contacted Nicholas (the acting director at the corporate headquarters in Cambridge, Massachusetts), who informed him that the New York office's decision as final.

On March 2, 2012, Chevalier sent a letter to Irons asking that he reinstate his Zipcar membership. Chevalier claims his request has not been answered. He seeks $280.00 in damages and other unspecified damages. This includes reimbursement for the two parking tickets ($140.00 apiece) that were left with the rented car because there was no parking permit displayed on the car for the lot in which Chevalier parked.[2] He contends that the rental agreement with Zipcar does not contain any provision for the irreversible termination of membership when a customer returns a rented car to a location other than the original pickup location.

Chevalier's pleading reflects that, in addition to filing his case with this Court, he has mailed his Complaint to the Massachusetts Consumer Affairs & Business Regulation Department in Boston, Massachusetts, the Better Business Bureau in New York, the New York Department of Consumer Affairs/Customer Services Division in New York, the Better Business Bureau in Marlborough, Massachusetts, and the United States District Court for the Southern District of New York.

DISCUSSION

I.  The Filing Fee

Chevalier filed his Complaint but has not paid the $350.00 filing fee, see 28 U.S.C. § 1914(a) ($350.00 filing fee required for all non-habeas civil actions), or filed a motion for leave to proceed without prepayment of the filing fee, see 28 U.S.C. § 1915 (proceedings *in*

---

[2]Chevalier claims his damages to be $280.00; however, his breakdown of his damages as set forth in an Exhibit to his Complaint is unclear. For instance, it is unclear whether he seeks the return of a $75.00 annual membership fee (indicating it was supposed to be refunded to him), a $31.65 purchase charge, a $15.33 purchase return charge, a $64.48 purchase charge, a $65.33 secondary annual membership fee, and the $25.00 application fee). See Exhibit (Docket No. 1-1 at 1). Chevalier does not contest the general rental charges for the car.

*forma pauperis*). Generally, this Court affords litigants an opportunity to satisfy the filing fee requirements of this Court; however, Chevalier need not be given additional time because this action is being dismissed *sua sponte* for lack of subject matter jurisdiction, for the reasons set forth herein.

II.     Inherent Authority of the Court to Screen the Complaint

Because Chevalier is not proceeding *in forma pauperis* at this time, no statutory screening is authorized under the *in forma pauperis* statute, see 28 U.S.C. § 1915(e)(2). Nevertheless, a district court has inherent authority to dismiss a frivolous or malicious complaint *sua sponte*. See Mallard v. United States District Court, 490 U.S. 296, 307-08 (1989) (courts have authority to dismiss a frivolous or malicious lawsuits even in absence of any specific statutory provision); Fitzgerald v. First East Seventh Street Tenants Corp., 221 F.3d 362, 363-64 (2d Cir. 2000) ("district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources" and district court properly dismissed frivolous case, even in a fee-paying case).[3]  Further, the Court has an independent obligation to inquire, *sua sponte*, into its subject matter jurisdiction.[4]

---

[3]See also Bustos v. Chamberlain, 2009 WL 2782238, *2 (D.S.C. 2009) (noting that the court has inherent authority "to ensure a plaintiff has standing, that subject matter jurisdiction exists, and that a case is not frivolous") citing, *inter alia*, Mallard, 490 U.S. at 307-308; Pillay v. INS, 45 F.3d 14, 16-17 (2d Cir. 1995) (where a § 1915 screening was not applicable because a *pro se* party paid the filing fee, the Court still had inherent authority "wholly aside from any statutory warrant" to act *sua sponte*); and Rolle v. Berkowitz, 2004 WL 287678, *1 (S.D.N.Y. 2004) (*sua sponte* dismissal in fee-paying *pro se* case is warranted where the claims presented no arguably meritorious issue to consider).

[4]See McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004);  Fed. R. Civ. P. 12(h)(3) ("If the court determines ... it lacks subject matter jurisdiction, the court must dismiss the action.").  See also In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988) ("It is too elementary to

4

For purposes of preliminary screening, the Court liberally construes the Complaint because Chevalier is proceeding *pro se*. See Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept. of Educ., 209 F.3d 18, 23 (1st Cir. 2000). Even under a liberal construction, however, this Court cannot find that Chevalier has set forth any *bona fide* basis for the subject matter jurisdiction either under its federal question jurisdiction or its diversity jurisdiction.

III. Lack of Subject Matter Jurisdiction

1. Lack of Federal Question Jurisdiction

First, with respect to federal question jurisdiction, federal district courts have original jurisdiction over "federal question" cases. 28 U.S.C. § 1331. A federal question "aris[es] under the Constitution, laws, or treaties of the United States." Id.; Viqueira v. First Bank, 140 F.3d 12, 17 (1st Cir. 1998). A claim arises under federal law within the meaning of § 1331 if a federal cause of action emerges from the face of a well-pleaded complaint. City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 163 (1997); Viqueira, 140 F.3d at 17. The well-pleaded complaint rule generally restricts the exercise of federal question jurisdiction to instances in which a federal claim is made manifest within the four corners of a plaintiff's complaint. Viqeuira, 140 F.3d at 17.

Here, Chevalier has asserted no federal claim and this Court cannot discern any from his allegations. See College of Surgeons, 522 U.S. at 163; Viqeuira, 140 F.3d at 17. Chevalier does not specify his legal causes of action. He only asserts that his damages are based on "unethical business practices and Consumer rights violations," Compl. at 1. He fails to identify any federal statute that has been violated; indeed, it appears that his claims are grounded wholly in state law based on breach of contract and/or consumer protection rights. These causes of action do not

---

warrant citation of authority that a court has an obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting.").

5

raise federal questions.  Consequently, this Court lacks jurisdiction pursuant to 28 U.S.C. § 1331.

      2.     <u>Lack of Diversity Jurisdiction</u>

Next, district courts have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).  The first requirement, diversity, must be complete, meaning the citizenship of each plaintiff must be shown to be diverse from that of each defendant.  <u>Owen Equip. & Erection Co.</u> v. <u>Kroger</u>, 437 U.S. 365, 373 (1978).  Chevalier fails to meet this requirement because he is presumed to be a resident (and citizen) of New York and two of the Defendants (Irons and Meyer), also are based in New York and are presumed also to be citizens of New York.  In light of this, diversity of citizenship is destroyed.

With respect to the second element, the amount in controversy, a court may dismiss an action when, "from the face of the pleadings, it is apparent, to a legal certainty, . . . that the plaintiff never was entitled to recover" a sum in excess of the jurisdictional minimum.  <u>St. Paul Mercury Indemnity Co.</u> v. <u>Red Cab Co.</u>, 303 U.S. 283, 289 (1839); <u>accord</u> <u>Spielman</u> v. <u>Genzyme Corp.</u>, 251 F.3d 1, 5 (1st Cir. 2001).  When determining whether, from the face of the pleadings, it is a legal certainty that a party could not meet the amount-in-controversy requirement, courts may look to the surrounding circumstances at the time the complaint was filed.  <u>See</u> <u>Spielman</u>, 251 F.3d at 5; <u>Coventry Sewage Assocs.</u> v. <u>Dworkin Realty Co.</u>, 71 F.3d 1, 4 (1st Cir. 1995).

Here, even if Chevalier could show that the parties are of diverse citizenship, he still cannot meet the amount in controversy requirement.  He only states that he is seeking $280.00 in damages.  Thus, the amount in controversy does not exceed $75,000.00. Although Chevalier also claims that he is also suing Zipcar for "an unspecified amount," this contention is to no avail.  This Court finds that, under the circumstances alleged in the Complaint, even if accepted as true, it is apparent to a legal certainty that Chevalier's amount in controversy would not be in excess

of $75,000.00. No reasonable person would suppose Chevalier's claims for damages could exceed $75,000.00 either under a contract claim and/or a consumer protection claim.

Accordingly, this Court finds it lacks subject matter jurisdiction over this action and therefore the action must be DISMISSED.

IV.     Failure to Provide Contact Information to the Court

This Court's Local Rules require a litigant to advise the Court of a mailing address in order to receive notice of rulings. See United States District Court for the District of Massachusetts Local Rule 83.5.2(e).[5] Although Chevalier indicates in his Complaint that he resides and works in New York, he has failed to notify this Court of any mailing address.[6] Nevertheless, this Court deems that Chevalier is under a continuing obligation to check on the status of his case and to advise the Court of a mailing address. Accordingly, under these circumstances, the dismissal of this action will take effect notwithstanding the inability to mail him a copy of this Memorandum and Order at his current address. The Clerk shall mail a copy of this Memorandum and Order to Chevalier's last known address.

CONCLUSION

Based on the foregoing, it is hereby Ordered that this action is DISMISSED in its entirety for lack of subject matter jurisdiction.

---

[5] Local Rule 83.5.2(e) provides: "Change of Address. Each attorney appearing and each party appearing pro se is under a continuing duty to notify the clerk of any change of address and telephone number. Notice under this rule shall be filed in every case. Any attorney or party appearing pro se who has not filed an appearance or provided the clerk with his current address in accordance with this rule shall not be entitled to notice. Notice mailed to an attorney's or party's last address of record shall constitute due notice contestable only upon proof of a failure to mail delivery." Id.

[6] A review of the PACER dockets indicate the last known address of Chevalier (as of September, 2011) is 6E, 1503 Metropolitan Avenue, Bronx, NY 10462.

7

SO ORDERED.

/s/ Nathaniel M. Gorton
NATHANIEL M. GORTON
UNITED STATES DISTRICT JUDGE

DATED: June 29, 2012